COMMONWEALTH *vs.* RUBIN P. JOHNSON. November 16, 1978. The defendant was convicted of armed robbery and of unlawfully carrying a firearm under his control in a motor vehicle. He assigns as error the denial of his pretrial motion to suppress certain evidence obtained in two searches of his automobile. As the defendant does not challenge

the scope of the searches made after the initial stop of the automobile, the sole question to be decided here is whether the "stop" of the defendant's automobile violated the defendant's rights under the Fourth Amendment. See *Terry* v. *Ohio*, 392 U.S. 1 (1968). There was no error. The following facts appear from the judge's findings and rulings on the defendant's motion to suppress. After the Allston Cinema was held up by two armed men, the victim called the police. She described the holdup men as young black males, one wearing "an orange and white plaid jacket," while the other had on "a black leather coat, blue jeans and a cap." She informed the police that the men fled on foot toward Commonwealth Avenue with about $800. This information was then broadcast by the police dispatcher. An officer on foot patrol in the vicinity of the cinema responded and reported that earlier in the evening he had seen a third man at a bus stop near the cinema approach two black males whose clothing matched that described in the broadcast by the police dispatcher. These broadcasts were heard by Detective Sergeant John Ciccolo, who was in charge of the Boston police robbery squad. Ciccolo (who was accompanied by another police officer) then proceeded in an unmarked car to Park Drive, where he parked at a location about a mile from the site of the robbery, which enabled him to observe traffic on Park Drive coming from Commonwealth Avenue. About four to eight minutes after he heard the radio broadcast, Ciccolo observed an automobile containing three black males proceeding down Park Drive from the direction of Commonwealth Avenue. The officer made a U-turn and followed the automobile; while doing so, he observed the actions of "the passenger occupants." See *Commonwealth* v. *Lehan*, 347 Mass. 197, 204 (1964). Ciccolo stopped the automobile and asked the defendant, who was driving, to get out of the vehicle. Upon request the defendant produced an operator's permit and the vehicle registration, which were in proper order. These papers were returned to the defendant. With the aid of a flashlight (see *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281 [1974]), Officer Ciccolo looked into the defendant's automobile and observed an orange plaid jacket on the front seat and that the passenger in the rear seat was wearing a black coat. As these garments apparently matched the description of those worn by the robbers of the cinema, Ciccolo radioed to have witnesses from the holdup brought to where the defendant was being held. Two witnesses identified the passenger in the front seat as one of the holdup men. All three men in the automobile were then placed under arrest. A search of the automobile at the scene of the arrest produced a brown paper bag resembling the one used by the robbers, in which a sum of money and a .38 cartridge were found. A second search at police headquarters revealed a .38 caliber handgun hidden under the front seat arm rest. Both searches were conducted without a search warrant. We hold that the stop of the defendant, in all the circumstances presented here, was not in violation of his Fourth Amendment rights and the evidence was properly admitted. *Commonwealth* v. *Riggins*, 366 Mass. 81, 87 (1974). See *Terry* v. *Ohio, supra* at 21-22; *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Contrast *Commonwealth* v. *Ferrara*, 376 Mass. 502, 504 (1978); *United States* v. *Mallides*, 473 F.2d 859, 861-862 (9th Cir. 1973). 1. This was an emergency situation calling for immediate action by the police officers. See *Sibron* v. *New York*, 392 U.S. 40, 73 (1968) (Harlan, J., concurring in result). They knew that the theater had just been robbed. They could reasonably have inferred that the robbers

would use a getaway car, and it was also reasonable for them to infer that the third man mentioned in the radio broadcast might be used as driver or lookout. See *Commonwealth* v. *Breen,* 357 Mass. 441, 446 (1970); *United States* v. *Jackson,* 448 F.2d 963, 970 (9th Cir. 1971), cert. den. sub nom. *Willis* v. *United States,* 405 U.S. 924 (1972). It had been reported that the robbers fled in the direction of Commonwealth Avenue. It was thus rational for the police to conclude that the holdup men might drive down Park Drive, a major access road which intersects Commonwealth Avenue within two miles of the cinema. The officers, parked a little more than a mile from the scene of the robbery, observed the defendant's automobile passing them about four to eight minutes after the radio broadcast, "a time which was consistent with the time necessary to travel there from the scene of the robbery, based on the time of the broadcast of the general alarm." *Commonwealth* v. *Riggins, supra* at 86-87. In addition, Ciccolo had observed the passenger in the rear seat looking back as though afraid of being followed and the passenger in front crouched down as though to avoid recognition. See *Commonwealth* v. *Anderson,* 366 Mass. 394, 400 (1974). In sum, we conclude that the stop made by Ciccolo merely for the purpose of conducting an inquiry was reasonable in these circumstances. *Commonwealth* v. *Riggins, supra* at 87, and cases cited. Contrast *United States* v. *Nicholas,* 448 F.2d 622, 624, 625 (8th Cir. 1971). 2. The evidence does not support the defendant's contention that Ciccolo's actions were based solely on the ethnicity of the occupants of the automobile. Compare *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 884 (1975) (reasonable suspicion that the automobile contained aliens who entered the country illegally could not be based solely on the apparent Mexican ancestry of the automobile's occupants). But see *United States* v. *Collins,* 532 F.2d 79, 85-86 (8th Cir.) (dissenting opinion), cert. denied, 429 U.S. 836 (1976).

*Judgments affirmed.*

The case was submitted on briefs.
*Fern L. Nesson* for the defendant.
*Stephen M. Needle, Thomas J. Carey, Jr.,* Assistant District Attorneys, & *Joseph I. Ippolito,* for the Commonwealth.