COMMONWEALTH *vs.* ZAN E. CHEEK.

Suffolk. May 7, 1992. - August 20, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Search and Seizure,* Threshold police inquiry. *Constitutional Law,* Search and seizure.

Circumstances attending the frisk of a pedestrian's coat by police officers, including findings by a judge that the officers were responding to a radio call describing a stabbing and a suspect wearing a "black ¾ length goose"; that the pedestrian's goose-down jacket matched the description given in the radio broadcast; that the officers spotted him "in proximity" to where the stabbing occurred; and, finally, that the area where the pedestrian was stopped was known to the officers as a "high crime area," fell short of constituting sufficient articulable facts on which the officers could have based a reasonable suspicion that he was the perpetrator of the stabbing; consequently, the officers' investigatory stop of the pedestrian was not justified under art. 14 of the Declaration of Rights of the Massachusetts Constitution, their search of his coat, leading to their discovery of a handgun, ammunition, and a quantity of marihuana, was impermissible, and he was, therefore, entitled to suppression of the evidence illegally seized. [494-497]

INDICTMENTS found and returned in the Superior Court Department on November 21, 1990.

A motion to suppress evidence was heard by *John C. Cratsley,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Wilkins,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Nancy A. Dolberg* for the defendant.

*Brian J. Carney,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Zan E. Cheek, stands indicted for the unlawful carrying of a handgun, possession of ammunition, and possession of marihuana with intent to distribute. After a hearing, a Superior Court judge denied the defendant's motion to suppress the evidence seized from him after police stopped and frisked him in the Roxbury section of Boston. The defendant applied to a single justice of this court for leave to appeal the denial of his motion. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882 (1979). The single justice allowed the defendant's application for leave to appeal and reported the appeal to the full bench. We reverse the judge's order denying the defendant's motion to suppress.

We summarize the facts found by the motion judge. On the evening of November 12, 1990, Boston police Officers Andrew Gainey and Paul Murphy and State Trooper Kerry McHugh were on routine patrol in the Grove Hall section of Roxbury. At approximately 11:20 P.M., the officers received the following bulletin over their police radio:

"16 Ruthven Street, the second floor, stab victim stabbed to the back supposed to be conscious.

"For a suspect we have a black male with a black ¾ length goose known as Angelo of the Humboldt group. We'll get further info later."

Following receipt of the bulletin, Officers Gainey and Murphy and Trooper McHugh began to search the Grove Hall area for a suspect in the stabbing. Subsequently, the officers observed a black male (the defendant) walking on a street approximately one-half mile from the scene of the reported stabbing. The defendant was wearing a dark-colored three-quarter length goose-down jacket.

The police approached the defendant, and Officer Murphy asked him his name, to which he responded "Zan" or "Ann." His response was not clear to the officers because he had his coat zippered up over his mouth. The defendant's hands were in his coat pocket. Officer Murphy frisked the defendant and retrieved a .38 caliber handgun from his front coat pocket. Officer Murphy placed the defendant under arrest after he failed to produce a license to carry the gun. A subsequent

booking search of the defendant revealed seventeen plastic bags of marihuana.[1]

Upholding the search of the defendant, the motion judge did not consider whether the police had probable cause to search the defendant but, rather, concluded that the police officers were justified in stopping the defendant for a limited investigatory inquiry.[2] The defendant argues that the motion judge's ruling was erroneous because it violated his rights under art. 14 of the Declaration of Rights of the Massachusetts Constitution and the Fourth Amendment to the United States Constitution. We agree, but need focus only on the defendant's arguments under art. 14.

In determining whether a police investigatory stop is justified under art. 14, this court has held that the police must have "reasonable suspicion" to conduct the stop. *Commonwealth* v. *Lyons*, 409 Mass. 16, 18 (1990). See *Commonwealth* v. *Carrasquillo*, 30 Mass. App. Ct. 783 (1991). To meet the "reasonable suspicion" standard under *Lyons*, the officer's suspicion must be grounded in " 'specific, articulable facts and reasonable inferences [drawn] therefrom' rather than on a 'hunch.' " *Lyons, supra* at 19, quoting *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Where the police rely on a police radio call to conduct an investigatory stop, under both Federal and State law, the Commonwealth

---

[1]At the scene of the arrest, according to the defendant's brief, the police determined that the defendant was not the perpetrator of the stabbing.

[2]Although the motion judge did not find specifically that the defendant was "seized," he treated this case as a "*Terry*-type" case. *Terry* v. *Ohio*, 392 U.S. 1 (1968). Thus, we proceed on the assumption that the motion judge determined that the police officers effectuated a "stop" which implicated the defendant's constitutional rights. On appeal of the denial of the motion to suppress, the Commonwealth argues, for the first time, that the defendant was not "seized" and that the frisk was justified even if the police officers did not have the reasonable suspicion to justify the stop, pursuant to the principles set forth in *Commonwealth* v. *Fraser*, 410 Mass. 541, 544-545 n.4 (1991) (protective frisk upheld in the context of a non-seizure field interrogation where officer had come in contact with someone he considered to be dangerous). We think it clear on this record that there was a "stop" or "seizure" prior to the frisk, and we proceed on the same premises as did the judge. Thus, *Fraser* is inapposite.

must present evidence at the hearing on the motion to suppress on the factual basis for the police radio call in order to establish its indicia of reliability. See *Commonwealth v. Fraser*, 410 Mass. 541, 545-546 (1991) (Fourth Amendment); *Commonwealth v. Antobenedetto*, 366 Mass. 51, 55 (1974) (Fourth Amendment); *Commonwealth v. Wainio*, 7 Mass. App. Ct. 863 (1979); *Commonwealth v. Morales*, 4 Mass. App. Ct. 779 (1976). See also *Commonwealth v. Lyons*, *supra* at 19.

In this case, the Commonwealth presented no evidence as to the source of the information on which the radio call was based. The motion judge determined that the police reasonably could infer that the informant who provided the information broadcast over the police radio was a police officer who responded to the scene of the stabbing. We need not rule on whether the motion judge was correct in drawing this inference, for even if we were to assume that the radio call carried the requisite indicia of reliability, the officers did not possess sufficient specific and articulable facts to establish a reasonable suspicion that the defendant had committed the crime.

The motion judge relied on several factors in addition to the radio broadcast to support the conclusion that the police acted reasonably in stopping the defendant. These factors include the judge's findings that the defendant's jacket matched the description given in the radio broadcast, that the officers spotted the defendant "in proximity" to where the stabbing occurred, and, finally, that the area where the defendant was stopped was known to the officers as a "high crime area."[3]

---

[3]The defendant contends that the evidence at the hearing on the motion to suppress does not support the judge's findings. In particular, the defendant states that the evidence before the judge was that the defendant's jacket was green, not black. For the purposes of this case, we shall accept the judge's findings that the defendant's jacket was dark and that it "matched." Additionally, for the same reason, we accept the judge's finding concerning the proximity of the defendant to the scene of the reported crime.

These factors could not have provided the officers with reasonable suspicion that the defendant was the perpetrator of the reported stabbing. Significantly, the description of the suspect as a "black male with a black ¾ length goose" could have fit a large number of men who reside in the Grove Hall section of Roxbury, a predominantly black neighborhood of the city. The officers possessed no additional physical description of the suspect that would have distinguished the defendant from any other black male in the area such as the suspect's height and weight, whether he had facial hair, unique markings on his face or clothes, or other identifying characteristics. That the jacket matched was not enough to single him out. Moreover, the Commonwealth presented no evidence to establish that a "¾ length goose" jacket, the sole distinctive physical characteristic of the garment, was somehow unusual or, at least, uncommon as an outer garment worn on a cold fall night.

Although the officers properly may consider that the defendant was one-half mile from the scene of the reported stabbing, taken together with the other facts in this case, it was not enough to support a reasonable suspicion. That the defendant was walking in a residential area before midnight one-half mile from the scene of the crime does not make up for the lack of detail in the radio description, as it did not help to single him out from any other black male in the area. There was no evidence that the defendant had been fleeing the scene of the crime or that he, or any other person, was engaged in any suspected criminal activity.

Finally, that the area where the police observed the defendant was a "high crime area" is not persuasive. This factor contributes nothing to the officers' ability to distinguish the defendant from any other black male in the Grove Hall section of Roxbury. There was no suspicious activity of the defendant observed by the police. Contrast *Commonwealth v. Moses*, 408 Mass. 136, 140 (1990) (police had reason to believe drug transaction was taking place; defendants were observed engaging in suspicious activity). Where there is a report of a crime in a neighborhood which police consider to be

a "high crime area," law enforcement officials may not conduct a broad sweep of that neighborhood stopping individuals who happen to live in the area and be about, hoping to apprehend a suspect. To permit police investigative stops under the sparse facts present in this case would be to encourage unduly intrusive police practices. The problems that may face the Grove Hall section of Roxbury or any other similar "high crime area" will not be resolved any more readily by excluding the individuals who live there from the protections afforded by our Constitution. See *Commonwealth* v. *Phillips*, *ante* 50, 58-59 (1992).

The facts in this case fall short of constituting sufficient articulable facts on which the officers could have based a reasonable suspicion that the defendant had committed a crime. This result is consistent with our decision in *Commonwealth* v. *Lyons*, 409 Mass. 16 (1990), where we held that a police investigatory stop violated the defendants' rights under art. 14. Because we hold that the officers were not justified in stopping the defendant, the search of the defendant was also impermissible. The evidence obtained as a result of the illegal seizure must be excluded. Accordingly, the defendant's motion to suppress should have been allowed.

The order denying the motion to suppress is vacated. An order shall be entered allowing the motion to suppress. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*