After a jury trial, the defendant was convicted of three counts of armed robbery and one count of assault by means of a dangerous weapon. He challenges the judge's denial of his motion to suppress his initial stop and, for the first time, asserts that the show-up identification procedure police used was improper and should have been suppressed. We affirm.
Background. The judge credited the testimony of each testifying police officer in its entirety, specifically noting certain pertinent facts.[2] We summarize the facts found by the motion judge, which are consistent with the evidence presented at trial. The defendant was one of three men suspected in the robbery of four Northeastern University students near the Ruggles Massachusetts Bay Transportation Authority (MBTA) station in the Roxbury section of Boston. One victim of the robbery called police and said that three men threatened him and his companions with a gun and at one point fired a bullet at the ground, prompting the victims to surrender their property. He described the three men as follows: the man with the gun was a black man wearing a black hoodie and blue jeans; the second assailant was a heavyset Hispanic man wearing a black hoodie and a black Colorado Rockies hat; and the third man was either black or Hispanic and the victim did not remember his clothing.
The victim's description of the assailants was dispatched over the radio. Because the Boston police department's "ShotSpotter"[3] system signaled that shots had been fired, police were already responding to the area. Officer Malik Morgan of the Boston housing police arrived at the Alice Taylor housing project, located in the immediate vicinity of the Ruggles station, within approximately five minutes of the initial report of a gunshot. Officer Morgan observed the defendant and two other men matching the victim's description of the assailants exit a residence approximately one minute after his arrival. Specifically, the officer observed the defendant to be a heavyset Hispanic man wearing a black hoodie and a black Colorado Rockies hat. Officer Morgan ordered the men to stay where they were; they did not comply and instead hurriedly retreated into the residence. Officer Morgan approached and knocked on the door for several minutes with no response. Sergeant John Doris of the Boston police department next arrived at the scene and was flagged down by Officer Morgan. Sergeant Doris also began to knock on the door, which eventually was opened by the mother of one of the three suspects, who lived there, and allowed the officers to enter the apartment. Sergeant Doris concluded that the three men, including the defendant, matched the victim's description and they became combative and uncooperative as Sergeant Doris spoke with them. As they continued to put their hands in their pockets despite Segeant Doris's requests for them to keep their hands visible, the officer requested backup.
The three men were handcuffed and frisked, and the apartment was searched for other people. After a shell casing was recovered close to the site of the robbery, Sergeant Doris arranged for three of the victims to be brought to the area for a show-up identification. The identification procedure took place approximately twenty minutes after the officers responded, at which time two of the victims positively identified the defendant, who was then placed under arrest.[4]
On appeal, the defendant asserts that his motion to suppress should have been allowed because Officer Morgan lacked reasonable suspicion to order the defendant and the other two men to stop. He further contends that the show-up identification procedure was unreliable and unduly suggestive.
Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Depiero, 473 Mass. 450, 453 (2016), quoting from Commonwealth v. Anderson, 461 Mass. 616, 619, cert. denied, 568 U.S. 946 (2012). As the defendant failed to challenge the show-up identification until now, we review to determine whether it was error for the judge to admit evidence from the show-up identification and, if so, "whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Kelly, 470 Mass. 682, 697 (2015).
We first conclude that the judge did not err in denying the defendant's motion to suppress. The defendant maintains that Officer Morgan lacked the requisite reasonable suspicion that the defendant had committed a crime when he ordered him to stop and that all evidence obtained after that order should be suppressed. Reasonable suspicion must be "based on specific, articulable facts and reasonable inferences therefrom." Commonwealth v. Pinto, 476 Mass. 361, 363-364 (2017). "To make an investigatory stop based solely on a physical description, the description need not be so particularized as to fit only a single person, but it cannot be so general that it would include a large number of people in the area where the stop occurs." Commonwealth v. Depina, 456 Mass. 238, 245-246 (2010).
Having discerned no clear error in the judge's findings of fact, we confine our analysis to those facts. As a result, we conclude that Officer Morgan had reasonable suspicion to order the defendant to stop. The defendant and his two companions matched the description offered by a victim of the robbery that was relayed to Officer Morgan. Although general, vague descriptions will not give rise to reasonable suspicion, particularized details can provide sufficient grounds. Compare Commonwealth v. Lopes, 455 Mass. 147, 157-158 (2009) (description of brown van with tinted windows and Cape Verdean flag in back was sufficiently particularized), with Commonwealth v. Cheek, 413 Mass. 492, 496 (1992) (description of suspect as "black male with black [three-quarter] length goose" jacket insufficient). The description of one assailant as a heavyset Hispanic male wearing a black hoodie and a black Colorado Rockies hat was particular enough to justify the officer's order that the defendant stop. Furthermore, the stop was supported by other factors: the temporal and physical proximity to the scene of the crime, the seriousness of the crime being investigated, and the defendant being with two other men matching the victim's description of the other suspects. See Depina, supra at 246-247. The judge's denial of the motion to suppress was proper.
Similarly, we conclude there was no substantial risk of a miscarriage of justice stemming from the show-up identification. A finding of a substantial risk of a miscarriage of justice occurs when an error leaves us "with a serious doubt that the defendant['s] guilt had been fairly adjudicated." Commonwealth v. Amirault, 424 Mass. 618, 647 (1997). Show-up identifications, which are essentially one-on-one identification procedures, are generally disfavored by the law because they are, to some extent, "inherently suggestive." Commonwealth v. Figueroa, 468 Mass. 204, 217 (2014). However, a show-up identification only violates due process "where the defendant proves by a preponderance of the evidence that it is 'unnecessarily suggestive' " (emphasis omitted). Ibid., quoting from Commonwealth v. Phillips, 452 Mass. 617, 627-628 (2008). The use of a show-up identification must be justified by good reason, with one such reason being concern for public safety following a violent crime. See Commonwealth v. Martin, 447 Mass. 274, 279 (2006) ; Phillips, supra at 629. In the present case, officers recognized the defendant and his companions as matching the description of the assailants, and there was an ongoing concern about an armed assailant who had just fired a gun in a densely populated area near a busy MBTA station. As this is one type of situation contemplated to justify the use of a show-up identification, we discern no error and therefore no substantial risk of a miscarriage of justice.
Judgments affirmed.

The judge began his written findings of fact with the following: "The [c]ourt heard testimony by Boston [h]ousing [p]olice Officer Malik Morgan and Boston [p]olice Sergeant John Doris at an evidentiary hearing held on November 24, 2015. The [c]ourt finds that [Officer] Morgan and [Sergeant] Doris were credible and credits all of their testimony."

A ShotSpotter is an automated acoustic device used by the Boston police department to detect and locate gunshots.

The identification procedure was undertaken after a warrant was obtained and the apartment was searched. Among other things, the search yielded property of the victims and a Colorado Rockies hat. During the show-up, the hat was worn by another suspect, not the defendant, and the defendant was positively identified nonetheless.